**Signed February 22, 2011.**

_____
**H. CHRISTOPHER MOTT**
**UNITED STATES BANKRUPTCY JUDGE**
_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| In re:  JOSE MUNOZ | § | |
| MAGDALENA MUNOZ | § | Case No. 10-31627-hcm |
| Debtors. | § | Chapter 13 |

| | | |
|---|---|---|
| JOSE MUNOZ and | § | |
| MAGDALENA MUNOZ | § | |
| | § | |
| Plaintiffs | § | |
| v. | § | |
| | § | |
| JAMES B. NUTTER & CO. and | § | Adv. No. 10-3039-hcm |
| ADALBERTO (BERT) NAVAR | § | |
| | § | |
| Defendants | § | |

## <u>MEMORANDUM OPINION</u>

On January 14, 2011, the Court conducted a trial in this adversary proceeding.   Jose Munoz and Magdalena Munoz, Plaintiffs ("Plaintiffs"), James B. Nutter & Co. ("Nutter"), a Defendant, and Adalberto "Bert" Navar ("Navar"), a

1

Defendant, appeared through their respective counsel. Plaintiffs and Defendants Nutter and Navar (collectively "Defendants") submitted this proceeding to the Court for decision based on stipulated facts with attached exhibits set forth in a Joint Pre-Trial Order ("Joint PTO") filed by the parties on January 11, 2011. Each of the parties rested and closed the record based on the evidence contained in the Joint PTO.

In general, Plaintiffs (the Chapter 13 debtors) seek to set aside a pre-petition foreclosure sale of their real property by Defendant Nutter (the lender) to Defendant Navar (the foreclosure sale purchaser) using §522(h), §544(a)(3), and/or §549(a) of the Bankruptcy Code. Alternatively, Plaintiffs seek to recover damages against Defendants for violation of the automatic stay under §362(k)(1) of the Bankruptcy Code. The Court has considered and weighed the evidence, exhibits, pleadings, briefs, statements and arguments of counsel, the record and legal authorities. The Court concludes for the reasons set forth in this Opinion, the relief sought by Plaintiffs must be denied.

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §157 and §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2). This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law under Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules").

I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs and Defendants stipulated to the following facts and admitted the following exhibits into evidence through the Joint PTO:

On June 16, 2003, Jose Munoz and Magdalena Munoz (herein "Plaintiffs") purchased the real estate located at 3436 Sunset Rose, El Paso, Texas 79936 ("Property").   In order to finance their purchase of the Property, Plaintiffs executed and delivered a Promissory Note dated June 16, 2003, in the original principal amount of $74,967.00, payable to the order of Nutter.   A true and correct copy of the Promissory Note is attached as Exhibit A to the Joint PTO.

Plaintiffs also executed and delivered a Deed of Trust dated June 16, 2003 ("Deed of Trust"), to secure payment of the Promissory Note, payable to the order of Nutter.   The Deed of Trust is recorded at volume 4596, page 3, of the real property records of El Paso County, Texas, a true and accurate copy of which is attached as Exhibit B to the Joint PTO.

The recorded Deed of Trust admitted into evidence as Exhibit B discloses the following information:   (i) Jose Munoz and Magdalena Munoz (herein "Plaintiffs") are described as the Grantor and Borrower; (ii) the address of the Property securing the Deed of Trust is listed as 3436 Sunset Rose Drive, El Paso, Texas 79936, and notices to the Borrower (Plaintiffs) are to be sent to that address; (iii) the address of Nutter, the Lender/beneficiary, is listed as 4153 Broadway, Kansas, City, Missouri 64111; (iv) the Promissory Note secured by the

3

Property is described in the Deed of Trust as "due and payable on July 1, 2033", if not paid earlier; and (v) the Deed of Trust contains the official seal of the El Paso County Clerk certifying that the Deed of Trust was duly recorded in the Official Public Records of Real Property in El Paso County, Texas on June 30, 2003.   No release of the Deed of Trust was shown to be recorded.

Plaintiffs fell behind on their payments under the Promissory Note and the Deed of Trust.   On April 2, 2010, Nutter executed and delivered its notice of default and opportunity to cure to Plaintiffs in accordance with the provisions of Texas Property Code §51.002.   A true and accurate copy of this notice is attached as Exhibit C to the Joint PTO.   Exhibit C demonstrates that this notice was mailed to Plaintiffs by certified mail to the Property address at 3436 Sunset Rose Drive, El Paso, Texas 79936 (the same address for Borrower/Plaintiffs disclosed in the recorded Deed of Trust); and that the notice was sent by Nutter from its address at 4153 Broadway, Kansas City, ~~Missouri~~ (the same address for Nutter disclosed in the recorded Deed of Trust).

On July 12, 2010, counsel for Nutter executed and delivered that certain Notice of Acceleration and Notice [of Substitute Trustee's Sale][1] to Plaintiffs in accordance with the provisions of Texas Property Code §51.002.   True and accurate copies of these notices are attached as Exhibit D to the Joint PTO.   Exhibit D demonstrates that these notices were mailed to Plaintiffs by certified and

---

[1] The Joint PTO stipulation states that Nutter's counsel delivered a "certain Notice of Acceleration and Notice to Jose Munoz and Magdalena Munoz…".   The Exhibit attached in connection with this stipulation are a Notice of Acceleration and a Notice of Substitute Trustee's Sale.

4

first class mail to the Property address at 3436 Sunset Rose Drive, El Paso, Texas 79936 (the same address for Borrower/Plaintiffs disclosed in the recorded Deed of Trust); and that the notices were sent on behalf of Nutter and listed Nutter's address as 4153 Broadway, Kansas City, Missouri 64111 (the same address for Nutter disclosed in the recorded Deed of Trust). The Notice of Substitute Trustee's Sale stated that the Property located at 3436 Sunset Rose, El Paso, Texas would be sold on Tuesday, August 3, 2010 beginning at 10:00 a.m. or not later than three hours after that time.

On July 12, 2010, counsel for Nutter, or his agent, caused the original Notice of Substitute Trustee's Sale to be filed with the El Paso County Clerk and posted at the location as designated by the Commissioner's Court of El Paso County pursuant to the provisions of Texas Property Code §51.002.  True and accurate copies of these notices are attached as Exhibit E to the Joint PTO. Pursuant to the terms of the notice, the foreclosure sale was scheduled for August 3, 2010.  Exhibit E demonstrates that the Notice of Substitute Trustee's Sale was filed in the office of the El Paso County Clerk on July 12, 2010, and listed Nutter's address as 4153 Broadway, Kansas City, Missouri 64111 (the same address for Nutter disclosed in the recorded Deed of Trust).

On July 28, 2010, Plaintiff Jose Munoz contacted the office of the attorney for Nutter to obtain the amount needed to reinstate (or pay current) the Note and Deed of Trust and prevent the upcoming foreclosure sale.

On August 3, 2010, at approximately 12:27 p.m. the subject real estate (herein the "Property") was sold to Adalberto M. Navar (herein "Navar") for $76,000 by Beverly Mitrisin, Substitute Trustee.   The foreclosure sale is evidenced by that certain Purchaser's Acknowledgment, Receipt and Admonishment dated August 3, 2010, and executed by Beverly Mitrisin, Substitute Trustee ("Acknowledgement").   A true and accurate copy of this Acknowledgment is attached as Exhibit F to the Joint PTO.

The Acknowledgment admitted as Exhibit F is dated August 3, 2010 (the date of the foreclosure sale); denotes the time of foreclosure sale on August 3, 2010; describes the purchaser as Adalberto M. Navar (herein "Navar"); states that the Substitute Trustee "sold" the Property to Navar for the price of $76,000; reflects receipt of $80,000 in certified checks from Navar; and reflects that a $4,000 overpayment would be refunded to Navar. The Acknowledgment reflects no conditions with respect to the transfer of title to Navar at the foreclosure sale.

On August 3, 2010, contemporaneously with the foreclosure sale, Navar delivered to Beverly Mitrisin, Substitute Trustee, two checks numbered 910300372 and 910300380 in the amount of $70,000 and $10,000, respectively.    A true and accurate copy of the front and back of the checks is attached as Exhibit G to the Joint PTO.

On August 4, 2010, the instant bankruptcy proceeding was filed by the Plaintiffs. On August 4, 2010 at approximately 2:58 p.m., counsel for Plaintiffs faxed notice of the bankruptcy to counsel for Nutter.   After receiving this notice,

6

counsel for Nutter discussed the foreclosure and the bankruptcy with counsel for Plaintiffs. On August 5, 2010, counsel for Nutter notified Navar of the filing of the bankruptcy.

On August 5, 2010, Plaintiffs filed a Notice of Lis Pendens in the real property records of El Paso County. A true and accurate copy of the recorded Notice of Lis Pendens is attached as Exhibit H to the Joint PTO.

On August 16, 2010, a Substitute Trustee's Deed, executed by Beverly Mitrisin, Substitute Trustee, was recorded as document no. 20100057229 of the real property records of El Paso County ("Trustee's Deed").   A true and accurate copy of this Trustee's Deed is attached as Exhibit I to the Joint PTO.

According to Exhibit I, the Trustee's Deed: (i) was notarized and executed by the Substitute Trustee on August 3, 2010 (the date of the foreclosure sale); (ii) reflects that the foreclosure sale was conducted on August 3, 2010 and the Property was "struck off" to Navar for the sum of $76,000 (the highest and best bid obtained for the Property); and (iii) sold and conveyed the Property to Navar. The Trustee's Deed denotes the official seal of the El Paso County Clerk certifying that it was duly recorded in the Official Public Records of Real Property in El Paso County, Texas. Also included in Exhibit I is an "Affidavit in Support of Substitute Trustee's Deed", which reflects a notarization and signature date of August 3, 2010 (the date of the foreclosure sale), and states that the sale was made by the Substitute Trustee on August 3, 2010.

On October 6, 2010, counsel for Plaintiffs advised counsel for Nutter that Plaintiffs' counsel had misread the foreclosure notice.

On October 13, 2010, the instant adversary proceeding was filed by Plaintiffs against Defendants.

At the trial on January 14, 2011, the parties appeared and jointly requested the Court to render its decision in this proceeding based on the stipulated facts and exhibits in the Joint PTO and post-trial briefs.   At the trial, the Court confirmed with counsel for each of the parties that they had no desire to present any additional evidence to the Court other than the evidence set forth in the Joint PTO.   The Court accepted the factual stipulations in the Joint PTO and admitted into evidence the exhibits attached to the Joint PTO.   Each of the parties then rested and closed their respective cases at the trial. The Court granted the parties' request to render a decision based on the Joint PTO, and directed the parties to specifically address, in post-trial briefs, the applicability of the following cases to the stipulated facts: *In re Hamilton,* 125 F.3d 292 (5th Cir. 1997) and *In re Gomez*, 388 B.R 270 (Bankr. S.D. Tex. 2008).

On January 25, 2011, Plaintiffs filed their Brief in Support of Avoidance of Transfer of Real Property located at 3436 Sunset Rose.   On January 28, 2011, Nutter filed its Trial Brief in Opposition to Avoidance of Transfer of Real Property Located at 3436 Sunset Rose.   On February 1, 2011, Navar filed his Response to Plaintiffs' Trial Brief adopting the analysis and argument of Nutter's Trial Brief.   On February 7, 2011, Plaintiffs filed their Response to Defendants' Trial Brief.

8

II.    **LEGAL ANALYSIS**

Through their Complaint, Plaintiffs seek to avoid the foreclosure sale transfer of the Property to Navar and recover the Property through 11 U.S.C. §522(h) by: (i) using the "strong-arm power" of 11 U.S.C. §544(a)(3); or (ii) as an "unauthorized" post-petition transfer under 11 U.S.C. §549(a).   Alternatively, Plaintiffs seek to recover damages for violation of the automatic stay under 11 U.S.C. §362(k)(1).

### A. Do Plaintiffs have Standing to Assert the Avoidance Powers of 11 U.S.C. §544(a)(3) and §549(a)?

Plaintiffs, as Chapter 13 Debtors, seek to avoid the foreclosure transfer of the Property under §544(a)(3) or alternatively §549(a) of the Bankruptcy Code. Both of these Bankruptcy Code sections vest the standing (or right) to bring an avoidance action in the "trustee", not a Chapter 13 debtor. *See* 11 U.S.C. §544(a) (the "trustee…may avoid any transfer"); 11 U.S.C. §549(a) (the "trustee may avoid a transfer").

The Fifth Circuit has held that 11 U.S.C. §522(h) allows a Chapter 13 debtor to exercise avoidance powers of a trustee in certain specific and limited circumstances.  *See Realty Portfolio, Inc. v. Hamilton (In re Hamilton),* 125 F.3d 292 at 296-297 (5th Cir. 1997). Section 522(h) of the Bankruptcy Code provides, in pertinent part:

> (h) The debtor may avoid a transfer of property of the debtor… to the extent that the debtor *could have exempted* such property

9

under subsection (g)(1) of this section if the trustee had avoided such transfer, if--

(1) such transfer is avoidable under section *544*, 545, 547, 548, *549*, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

(2) the trustee does not attempt to avoid such transfer.

11 U.S.C. §522(h) (emphasis added).

Section 522(h) specifically grants debtors standing to avoid certain involuntary transfers of exempt property, such as homesteads, if the trustee has not attempted to avoid the transfers. *Hamilton,* 125 F.3d at 297; *see also DeMarah v. United States (In re DeMarah)*, 62 F.3d 1248 (9th Cir. 1995). The right is granted to a debtor if a five-part test is met: (i) the transfer was not a voluntary transfer by the debtor; (ii) the debtor did not conceal the property; (iii) the trustee did not attempt to avoid the transfer; (iv) the debtor seeks to exercise an avoidance power usually used by the trustee, listed within §522(h); and (v) the transferred property is of a kind that the debtor would have been able to exempt from the estate if the trustee had avoided the transfer under one of the provisions in §522(g). *DeMarah*, 62 F.3d at 1250, cited with approval by the Fifth Circuit in *Hamilton*, 125 F. 3d at 297.

Here, it is apparent from the stipulated facts and admitted exhibits in the Joint PTO that four requirements of the five-part test for standing have been readily established—(i) the foreclosure sale transfer of the Property was not a "voluntary" transfer by Plaintiffs; (ii) Plaintiffs did not attempt to conceal the Property; (iii) the trustee has not attempted to avoid the transfer of the Property; and (iv) Plaintiffs

10

are seeking to avoid the foreclosure sale transfer of the Property under §544 and §549 which are avoidance powers specifically listed within §522(h).

For the first time in post-trial briefing, Defendants assert that Plaintiffs failed to present any evidence that the Property was their homestead and would be exempt—which is the last requirement of the five-part standing test. Therefore, Defendants argue that Plaintiffs lack standing to avoid the transfer of the Property under the trustee's "strong-arm power" of §544(a)(3) because §522(h) requires that the property must be of a kind that the debtor could have exempted.[2]  The factual stipulations submitted by the parties in the Joint PTO do not provide evidence that the Property was Plaintiffs' homestead and therefore would be exempt; although Plaintiffs suggest this is a "fact" in Plaintiffs' brief filed post-trial.

In their original Complaint filed on October 13, 2010 which initiated this adversary proceeding, Plaintiffs specifically alleged that (i) Plaintiffs have standing to bring the action under §522(h); (ii) the Property is their homestead which they could have claimed as exempt pursuant to §522(g); and (iii) the trustee could have avoided the transfer of the Property. *See* Complaint, ¶6.  Defendant Nutter, in its Answer to the Complaint, admits only that Plaintiffs "purports to claim" the Property is their homestead and specifically denies the trustee could have avoided the transfer.   Defendant Navar, in his Answer to the Complaint, states he is "unable to admit or deny allegations as to Plaintiffs' homestead" and denies a trustee could avoid the transfer.

---

[2] If Defendants' argument is correct, Plaintiffs would also lack standing to avoid the transfer of the Property under §549, because the Property must be of a kind that the Plaintiffs could have exempted under §522(h) to exercise the §549 avoidance power.

11

Under Bankruptcy Rule 7008(b)(5), a party that lacks knowledge or information sufficient to form a belief about the truth of an allegation must state that it lacks knowledge or information sufficient to form a belief, and if so stated, it has the effect of a denial. Here, Defendant Navar did not specifically state in his Answer that he lacked information and belief sufficient to form a belief as to the homestead allegation, which could have the effect of not denying the allegation. *See* Bankruptcy Rule 7008(b)(6) (an allegation is admitted if a responsive pleading is required and the allegation is not denied). The Bankruptcy Rules further require that if a party intends in "good faith" to deny only part of an allegation, it must admit the part that is true and deny the rest; and that a denial must "fairly respond" to the substance of the allegations. *See* Bankruptcy Rule 7008(b)(2) and (b)(4). One could posit that Defendant Nutter did not "fairly respond" to Plaintiffs' homestead allegation by admitting in its Answer only that Plaintiffs "purports to claim" the Property as their homestead.

It is true that Plaintiffs failed to present any evidence that the Property actually was their homestead through the Joint PTO and attached exhibits, which is the evidentiary record in this proceeding. However, Plaintiffs likely believed that Defendants were not contesting that the Property was their homestead at trial. It was not until after the record had closed, the trial was over, and the Joint PTO had been accepted, that Defendants belatedly contested the issue specifically through their post-trial brief. Plaintiffs also likely believed that Defendants were not challenging that Plaintiffs had standing to bring the action under §522(h). Indeed,

12

neither Defendant Nutter or Navar specifically denied in their Answers the allegation in the Complaint that Plaintiffs had standing, which could have the impact of admitting the standing allegation under Bankruptcy Rule 7008(b)(6).

Just as importantly, the Court finds it hard to believe that Defendant Nutter did not know that the Property was Plaintiffs' homestead--Nutter was the original lender and mortgagee under the Deed of Trust and sent notices of default and foreclosure to Plaintiffs at their home (Property) address. Likewise, the Court finds it impossible to believe that Defendant Navar did not know Plaintiffs resided on the Property—particularly in light of this Court's order requiring Plaintiffs to pay Navar monthly adequate protection payments to avoid eviction during the pendency of this adversary proceeding.  *See* Bankruptcy Rule 7008(b)(4)(imposing a "good faith" requirement on denials of allegations).

In the end, pleadings must be "construed so as to do justice". *See* Bankruptcy Rule 7008(e). After considering the applicable Bankruptcy Rules and the pleadings of the parties, the Court concludes that Plaintiffs have standing through §522(h) to bring an action to avoid the transfer of the Property under §544 and §549. However, for the reasons stated below, the Court determines that Plaintiffs' claims for relief under §544 and §549 must be denied on the merits.

## B. Is the Transfer of the Property to Navar Avoidable Under the "Strong-Arm Power" of 11 U.S.C. §544(a)(3)?

Plaintiffs' bankruptcy case was filed on August 4, 2010--after the foreclosure sale was conducted on the Property on August 3, 2010--but before the recordation of the Trustee's Deed on August 16, 2010.  The Court has reviewed

13

the factual stipulations, the Complaint and briefs, and Plaintiffs have made no specific allegations regarding any technical defects in the foreclosure sale.

Instead, Plaintiffs are relying solely on the premise that the Trustee's Deed was recorded after the bankruptcy filing to avoid the transfer to Navar under the "strong-arm power" granted to a trustee under 11 U.S.C. §544(a)(3).

### 1. Bona Fide Purchaser Status

Section 544(a)(3) of the Bankruptcy Code provides, in part, as follows:

(a) The trustee shall have, as of commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor…that is voidable by-

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that *obtains the status of a bona fide purchaser* and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.  11 U.S.C. §544(a)(3). (emphasis added)

In essence, §544(a)(3) provides that a transfer of a debtor's real property may be set aside through the use of the trustee's avoidance power if the transfer is not perfected and enforceable against a hypothetical bona fide purchaser for value at the time the bankruptcy petition is filed by a debtor.   Here, Plaintiffs argue that a hypothetical bona fide purchaser on the date of their bankruptcy filing would have been able to avoid the foreclosure sale transfer of the Property to Navar.   This is true, according to Plaintiffs, because a hypothetical purchaser under §544(a)(3) would not have notice of the foreclosure sale to Navar as the Trustee's Deed to Navar had not been recorded by August 4, 2010-- the date Plaintiffs filed for relief

14

under Chapter 13.

Plaintiffs' theory under §544(a)(3) is not novel. Indeed, the facts here are analogous to a Fifth Circuit case where a debtor filed a Chapter 13 bankruptcy petition three days after a foreclosure sale on his homestead property, but before the trustee's deed was recorded. *See Realty Portfolio, Inc. v.Hamilton (In re Hamilton),* 125 F.3d 292 (5th Cir. 1997). In *Hamilton*, the debtor filed an adversary proceeding seeking to set aside the foreclosure sale under §544(a)(3) utilizing §522(h). After the initial trial, the bankruptcy court avoided the foreclosure sale transfer, revested title to the property in the debtor (Hamilton), and awarded the foreclosure sale purchaser (Realty Portfolio, Inc.) a lien on the property in the amount of the price paid at the foreclosure sale. 125 F.3d at 295. The district court affirmed, but the Fifth Circuit reversed and remanded.

The Fifth Circuit in *Hamilton* recognized that §544(a)(3) permits the avoidance of a transfer of real property that is not perfected and enforceable against a "bona fide purchaser" at the time the bankruptcy case is filed—and held that "bona fide purchaser" status under §544(a)(3) is defined under state law. 125 F.3d at 298 (*citing Mut. Benefit Life Ins. Co. v. Pinetree, Ltd. (In re Pinetree, Ltd.),* 876 F.2d 34, 36 (5th Cir. 1989)) (other citations omitted). With respect to the definition of a "bona fide purchaser" under Texas law, the Fifth Circuit stated:

> Under Texas law, a hypothetical purchaser would gain good title to Hamilton's property after it was sold at a valid foreclosure sale but before the substitute trustee's deed was recorded, unless the purchaser had notice of the foreclosure purchase. See Tex. Prop. Code Ann. §13.001(a). Under §544, the actual knowledge of the trustee is not relevant. 11 U.S.C. §544(a). *The issue is therefore*

15

> whether a hypothetical purchaser would be charged with implied knowledge of the foreclosure by **constructive** or **inquiry** notice. *Hamilton,* 125 F.3d at 299 (emphasis added).

In substance, based on *Hamilton,* to achieve "bona fide purchaser" status under Texas law, two prongs must be satisfied: (i) a hypothetical purchaser must not have "constructive notice" of the foreclosure sale and (ii) a hypothetical purchaser must not have "inquiry notice" of the foreclosure sale.   So, for Plaintiffs to prevail under their §544(a)(3) theory and prove bona fide purchaser status, a hypothetical purchaser as of the date of Plaintiffs' bankruptcy filing (August 4, 2010) must not have had "constructive notice" and "inquiry notice" of the foreclosure sale purchase of the Property by Navar from Nutter.   The Court will examine each of these types of notice in accordance with the precedent established by the Fifth Circuit in *Hamilton* and Texas state law*.*

## 2. <u>Constructive Notice</u>

Under Texas law, "constructive notice" is given by properly recorded instruments. When properly recorded, knowledge of such instruments is charged to a person as a matter of law, regardless of the person's actual knowledge of such instruments. *Hamilton*, 125 F.3d at 299 (citing *Mooney v. Harlin,* 622 S.W.2d 83, 85 (Tex. 1981)); Tex. Prop. Code §13.002 (which provides "an instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument").   So, as a matter of law, where a properly recorded deed of trust is on file as of the date of the bankruptcy filing, a hypothetical purchaser has "constructive notice" of such deed of trust and would purchase the property subject

16

to the deed of trust.  *See Hamilton*, 125 F.3d at 299 (citing *Inwood N. Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex. 1987))(other citations omitted).

Here, the Deed of Trust executed by Plaintiffs in favor of Nutter was properly recorded in the real property records of El Paso County, Texas in June 2003—well before Plaintiffs' bankruptcy filing in August 2010.  It is rudimentary then that a hypothetical purchaser under §544(a)(3) had constructive notice of the Deed of Trust.

More to the point, however, is whether a hypothetical purchaser would have "constructive notice" of the Trustee's Deed from Nutter to Navar reflecting the foreclosure sale. Here, the Trustee's Deed to Navar was not recorded until August 16, 2010—after Plaintiffs' bankruptcy filing on August 4, 2010.   As a matter of law, if a trustee's deed is not recorded by the date of the bankruptcy filing, a hypothetical purchaser cannot be charged with "constructive notice" of the trustee's deed.    *See Hamilton*, 125 F.3d at 299 (citing Tex. Prop. Code §§13.001, 13.002; *In re Elam,* 194 B.R. 412, 415-16 (Bankr. E.D. Tex. 1996))(other citations omitted).   Thus, a hypothetical purchaser would not have "constructive notice" of the Trustee's Deed to Navar.

This does not end the analysis however. *Hamilton* teaches us that a two prong analysis is required to achieve "bona fide purchaser" status under §544(a)(3).   A hypothetical purchaser under §544(a)(3) can be charged with "inquiry notice" under Texas law of a foreclosure sale, even though the

17

hypothetical purchaser cannot be charged with "constructive notice".

### 3. **Inquiry Notice**

In *Hamilton,* the foreclosure sale purchaser (Realty Portfolio, Inc.) argued that constructive notice of the deed of trust would then trigger a duty of inquiry that would place a hypothetical purchaser on "inquiry notice" of the foreclosure purchase.   The Fifth Circuit acknowledged that Texas law recognizes the "inquiry notice" doctrine--which is triggered by notice of facts that would put a reasonably prudent person on a duty of inquiry. *Hamilton*, 125 F.3d at 299; *see also Woodward v. Ortiz,* 237 S.W.2d 286, 289 (1951); *Prewitt v. United States,* 792 F.2d 1353, 1358-59 (5th Cir. 1986); *Teofan v. Cools (In re Spring Creek Invs. of Dallas, N.V., Inc.),* 71 B.R. 157, 159-60 (Bankr. N.D. Tex. 1987).   Under Texas law, constructive notice of a recorded deed of trust in the chain of title puts a subsequent purchaser under a "duty to make a reasonable inquiry into the status of the deed of trust".   *See Hamilton*, 125 F.3d at 299, (citing *Lumpkin v. Adams*, 11 S.W. 1070, 1073 (1889); *Olsen v. Bank One (In re Bruder),* 207 B.R. 151, 159 (N.D. Ill. 1997)).

Applying this principle to the facts at bar, the Deed of Trust from Plaintiffs to Nutter was recorded prior to the bankruptcy. This means a hypothetical purchaser of the Property under §544(a)(3) would be charged with a duty to make a "reasonable inquiry" into the status of such Deed of Trust. In this regard, a hypothetical purchaser in our case would be on "inquiry notice" of the recorded Deed of Trust to Nutter, the information contained in the Deed of Trust, and any

18

other documents of record in the chain of title of the Property. This is true because

under Texas law:

> [A] purchaser is bound by *every* recital, reference and reservation
> contained in or fairly disclosed by any instrument which forms an
> essential link in the chain of title under which he claims. . .The
> rationale of the rule is that any description, recital of fact or reference
> to other documents puts the purchaser upon inquiry, and he is bound
> to follow up this inquiry, step by step, from one discovery to another
> and from one instrument to another, until the whole series of title
> deeds is exhausted and a complete knowledge of all the matters
> referred to and affecting the estate is obtained. (emphasis added)
> *Westland Oil Dev. Corp. v. Gulf Oil Corp.,* 637 S.W.2d 903, 908 (Tex.
> 1982)(other citations omitted); *see also Hamilton,* 125 F.3d at 300.

This "duty of inquiry" imposed on a hypothetical purchaser is not limitless-

the duty is governed by "standards of reasonableness" and extends to "those

things which a reasonably diligent inquiry and exercise of the means of information

at hand would have discovered." *Hamilton,* 125 F.3d at 300 (citing *Woodward,* 237

S.W.2d at 289); *Prewitt,* 792 F.2d at 1359 ("a reasonably diligent inquiry and

exercise of the means of information at hand" is required); *Westland,* 637 S.W.2d

at 908 ("diligent inquiry and search" is required); *In re Spring Creek Invs.,* 71 B.R.

at 160 (the duty does not extend to "exhaustive inquiry or investigation of

speculation and conjecture").

According to the Fifth Circuit, a hypothetical purchaser, acquiring the

property subject to an unreleased deed of trust, would inquire further into the

status of the deed of trust, using other "available means of information readily at

hand". *Hamilton*, 125 F.3d at 300. Specifically, if the deed of trust remained

unsatisfied from a search of the real property records, a hypothetical purchaser

would be under a duty to:

> *inquire to the mortgage company identified in the recorded deed of trust*. If such inquiry would not disclose the foreclosure sale and substitute trustee's deed, then the hypothetical purchaser could rely on the absence of any record of the substitute trustee's deed in the chain of title and acquire the Hamilton (Debtor) property without notice of the foreclosure sale. *Hamilton*, 125 F.3d at 300. (emphasis added)

The Fifth Circuit also stated that whether a reasonable inquiry into the recorded deed of trust would lead to knowledge of the foreclosure sale depends upon the (i) actual facts in the case; (ii) actual documents in the real property records; (iii) sources of information "fairly suggested" by the real property records; and (iv) means of information actually at hand, such as the identity of the mortgage company. *Hamilton,* 125 F.3d at 300.[3]

In *Hamilton*, after setting forth the standards for "constructive notice" and "inquiry notice" under Texas law, the Fifth Circuit reversed the avoidance of the foreclosure sale transfer to the purchaser. The Fifth Circuit remanded the proceeding to the bankruptcy court for a determination of whether a "reasonably diligent inquiry" into the recorded deed of trust and "exercise of the means of information at hand" on the date of the bankruptcy would have disclosed facts

---

[3] Indeed, other courts have found that a purchaser's reasonably diligent inquiry, through information at hand, can lead to a purchaser's implied knowledge of a foreclosure sale under a recorded deed of trust even in the absence of a recorded trustee's deed. *See Hamilton,* 125 F.3d at 300-01 (citing *Clarkson v. Ruiz,* 140 S.W.2d 206, 210 (Tex. Civ. App.–San Antonio 1940, writ dism'd) for the proposition that purchasers on notice of an unreleased deed of trust would have been put on inquiry, which, if diligently pursued, would have in all probability, led to a discovery of the foreclosure under the deed of trust)(other citations omitted).

sufficient to place a hypothetical purchaser under §544(a)(3) on notice of the foreclosure sale and trustee's deed.[4]  *Hamilton*, 125 F.3d at 302.

Applying the *Hamilton* test of "inquiry notice" is a challenge for the Court in the case at bar. The stipulated facts and exhibits presented to the Court by the parties through the Joint PTO do not readily answer each of the questions raised by the Fifth Circuit in *Hamilton.*  Here, the parties certainly knew about the *Hamilton* decision (it was raised by a pre-trial motion and the Court at the trial), but all parties chose to submit the case to the Court on the stipulated facts and exhibits in the Joint PTO and close the evidentiary record. In a perfect world, the Court would have liked more evidence on the "inquiry notice" standard; however, the Court recognizes that our world is not perfect.

On balance, however, after weighing the stipulated facts and admitted exhibits, the Court concludes that a hypothetical purchaser of the Property would not be able to obtain bona fide purchaser status under §544(a)(3) and Texas law as of the date of Plaintiffs' bankruptcy filing.  The evidence demonstrates that a "reasonable inquiry" to Nutter (the mortgage lender) by a hypothetical purchaser coupled with other available means of information readily at hand, would have

---

[4]  The analytical framework of §544(a)(3) set forth in *Hamilton* has continued to be followed by the Fifth Circuit and lower courts.  *See e.g., Gomez v. Kamper Investments LLC (In re Gomez),* 2010 WL 50938933 (5th Cir. Dec. 10, 2010)(unpublished opinion)(dismissing appeal of debtor from judgment of bankruptcy court upholding the validity of pre-petition foreclosure sale under §544 which used the *Hamilton* analysis); *Trinh v. Intertex, Inc.* (*In re Trinh),* 210 F.3d 369 (5th Cir. 2000)(unpublished opinion) (affirming denial of debtor's §544 avoidance action against pre-petition purchaser at constable execution sale based on mootness, but recognizing the continued vitality of the *Hamilton* twin doctrines of constructive notice and inquiry notice).

revealed the existence of the foreclosure sale of the Property and Trustee's Deed to Navar on the date of Plaintiffs' bankruptcy filing.

To begin with, the Deed of Trust from Plaintiffs to Nutter encumbering the Property was recorded prior to the bankruptcy and was not released.   This means a hypothetical purchaser of the Property under §544(a)(3), at the time of the bankruptcy, would be charged with a duty to make a "reasonable inquiry" into the status of such unreleased Deed of Trust. Such hypothetical purchaser would also be charged with notice of all information disclosed in such recorded Deed of Trust. *Hamilton*, 125 F. 3d at 300.

The Deed of Trust in this case disclosed that the Property secured a Promissory Note that would not be paid off until 2033—well after the date of Plaintiffs' bankruptcy filing in August 2010. The Deed of Trust also disclosed that the lender (Nutter) could foreclose on the Property if there was a default, and that the Property would be sold to a purchaser making the highest cash bid on the first Tuesday of the month—which is exactly what happened on August 3, 2010, the day before the bankruptcy.

Significantly, Nutter was the lender (mortgage company) identified in the recorded Deed of Trust.   The evidence demonstrated that Nutter was <u>still</u> the lender at the time of the foreclosure sale and Plaintiffs' bankruptcy.[5] Nutter's address at the time of the foreclosure sale and Plaintiffs' bankruptcy filing (in Kansas City, Missouri) was the very same address for Nutter identified in the

---

[5] Unlike many mortgages in today's financial markets, the Deed of Trust and Promissory Note here had not been "flipped" or assigned multiple times.  Nutter was the sole mortgage company and mortgage servicer from start to finish.

22

recorded Deed of Trust. Nutter, from the same Kansas City, Missouri office, had issued a notice of default under the Deed of Trust to Plaintiffs in the months prior to the bankruptcy filing. A hypothetical purchaser of the Property on the date of Plaintiffs' bankruptcy filing would have readily contacted Nutter at Nutter's address in the Deed of Trust, made reasonable inquiry about the status of the unreleased Deed of Trust, and discovered: that a default notice had been issued to Plaintiffs by Nutter, and that a foreclosure sale had been scheduled and occurred on August 3, 2010. *See Hamilton*, 125 F.3d at 300 (if a deed of trust remained unsatisfied from a search of the real property records, a hypothetical purchaser would be under a duty to inquire to the mortgage company identified in the recorded deed of trust).

The actual facts in this case also confirm that a reasonable inquiry into the status of the recorded Deed of Trust would have led to knowledge of the foreclosure sale and existence of the Trustee's Deed.   A reasonable inquiry made by a hypothetical purchaser to Nutter (the lender) on the date of the bankruptcy filing on August 4, 2010, would have revealed that the foreclosure sale of the Property had already been completed and a Trustee's Deed to Navar had been signed.   In this regard, the stipulated facts and exhibits demonstrate that on August 3, 2010 (the day before the bankruptcy filing) all of the following occurred: (i) the Property was "sold" to Navar by Nutter at the foreclosure sale; (ii) the foreclosure sale purchase price was paid by Navar in certified funds; (iii) the

23

Acknowledgement from the foreclosure sale was signed and dated;[6] and (iv) the Trustee's Deed to Navar was actually signed, notarized and dated. *See Hamilton*, 125 F. 3d at 300-02 (if a "reasonably diligent inquiry" into a recorded deed of trust using the "means of information at hand" and the "actual facts in the case" as of the date of the bankruptcy filing would have disclosed facts sufficient to place a hypothetical purchaser on notice of the foreclosure sale and trustee's deed, the hypothetical purchaser would not have "bona fide purchaser" status under §544).

Other sources "fairly suggested" by the recorded Deed of Trust would have reasonably revealed knowledge of the foreclosure sale of the Property on August 3, 2010. *See Hamilton*, 125 F.3d at 300 (whether a reasonable inquiry into a recorded deed of trust would lead to knowledge of the foreclosure sale depends in part on "sources of information fairly suggested by the real property records"). Here, on July 12, 2010, Plaintiffs were sent a Notice of Substitute Trustee's Sale by counsel for Nutter that advised Plaintiffs that a foreclosure sale of the Property would be conducted on August 3, 2010. The parties stipulated that Plaintiff Jose Munoz contacted Nutter's counsel on July 28, 2010 (prior to the bankruptcy filing and after Plaintiff had been sent the Notice of Substitute Trustee's Sale advising of the August 3, 2010 scheduled foreclosure) in an effort to prevent the upcoming foreclosure sale. The recorded Deed of Trust disclosed that the address for Plaintiffs was the Property address (3436 Sunset Rose Drive, El Paso, Texas). So,

---

[6] Unlike the *Gomez* case, the Acknowledgement (Buyer's Receipt) was not laced with unfulfilled conditions on the foreclosure sale transfer. *Cf. Gomez v. Kamper Investments, LLC, (In re Gomez),* 388 B.R. 279. 283, 289 (Bankr. S.D. Tex. 2008), *rev'd in part,* Civil Action No. M-08-155 (S.D. Tex. March 31, 2009)(unpublished).

using information suggested by the unreleased Deed of Trust—i.e., the name and address of the Borrower/Plaintiffs--a hypothetical purchaser could have readily contacted Plaintiffs on August 4, 2010 and reasonably learned that the Property had been scheduled for foreclosure sale on August 3, 2010.

Defendants also contend that a "reasonable inquiry" by a hypothetical purchaser would have uncovered the Notice of Substitute Trustee's Sale that was filed with the El Paso County Clerk and posted at the El Paso County Courthouse on July 12, 2010.   It is true that before a foreclosure sale, notice of the pending sale must be filed in the office of the county clerk of the county and posted at the courthouse door of the county where the property is located.   *See* Tex. Prop. Code §51.002(b).   However, after a foreclosure sale, no posted or filed records are legally required to be maintained.   *See* Tex. Prop. Code §51.002(f) (the clerk may dispose of the notices after the date of sale specified in the notice has passed).

Here, there is nothing in the factual stipulations or exhibits that demonstrates the Notice of Substitute Trustee's Sale actually remained posted at the El Paso County Courthouse or remained on file with the El Paso County Clerk on August 4, 2010—the date of Plaintiffs' bankruptcy filing. However, given the close proximity between the time and date of the foreclosure sale on August 3, 2010 and the time and date of Plaintiffs' bankruptcy filing on August 4, 2010—a period of 24 hours or less, and likely only a few business hours—it seems very reasonable to assume that the Notice of Substitute Trustee's Sale remained in

either the El Paso County Clerk's public files or was still publicly posted at the El Paso County Courthouse at the time of Plaintiffs' bankruptcy filing. In absence of actual proof, the Court does not feel comfortable in relying on this public posting and filing of the Notice of Substitute Trustee's Sale in concluding that a hypothetical purchaser would have uncovered the Notice as of the date of Plaintiffs' bankruptcy filing.  It does buttress, however, the Court's ultimate conclusion that under the actual facts of this particular case, a reasonably diligent inquiry by a hypothetical purchaser would have led to discovery of the foreclosure sale.

In sum, the Court concludes that a "reasonable inquiry" by a hypothetical purchaser on the date of Plaintiffs' bankruptcy filing would have revealed the existence of the foreclosure sale of the Property and Trustee's Deed to Navar. Accordingly, such hypothetical purchaser would not have "bona fide purchaser" status under §544(a)(3) and state law. Plaintiffs may not avoid the transfer of the Property to Navar under §544(a)(3).

### 4.  Burden of Proof on Bona Fide Purchaser Status

It is well established that the Debtors, as Plaintiffs, bear the burden of proof under the "strong arm power" of §544(a) to show that their rights as a hypothetical bona fide purchaser of real property under state law is superior to the rights of Defendants Nutter and Navar. *See e.g., In re Jones,* 308 B.R. 223, 228 (E.D. Pa. 2003) (debtor has burden of proof under §544(a)(3)); *Fink v. Tower Bank & Trust Co. (In re Fink),* No. 1:05-CV-17-TS, 2005 WL 2756731 at * 5-6   (N.D. Ind. Oct.

25, 2005) (trustee has burden of proof under §544(a)(3) to establish its rights as bona fide purchaser under local law would be superior to that of purchaser of property).[7]  The Fifth Circuit has recognized that a Chapter 13 debtor could avoid a pre-bankruptcy transfer of his property at a constable sale under §544(a)(3) only if a hypothetical purchaser could have obtained bona fide purchaser status under Texas law through application of both the "constructive notice" and "inquiry notice" doctrines set forth in *Hamilton.   See Trinh v. Intertex, Inc.* (*In re Trinh),* 210 F.3d 369 (5th Cir. 2000) (unpublished opinion).

Plaintiffs did not meet their burden of proof under §544(a)(3) to establish "bona fide purchaser" status. Under Texas law, a hypothetical purchaser can be charged with notice of a foreclosure sale by either "constructive notice" or "inquiry notice." *Hamilton*, 125 F.3d at 299.   As noted above, under Texas law, the recorded Deed of Trust from the Plaintiffs to Nutter provided constructive notice of the Deed of Trust, and puts the hypothetical purchaser on "inquiry notice" to make a reasonable inquiry into the status of the recorded Deed of Trust. *Hamilton*, 125 F.3d at 299-300.

---

[7]  *See also Hamilton v. Washington Mutual Bank (In re Colon)*, 376 B.R. 22, 26-28 (Bankr. Kan. 2007) *aff'd,* 376 B.R. 33 (B.A.P. 10th Cir. 2007) *rev'd on other grounds*, 563 F.3d 1171 (10th Cir. 2009)(trustee has burden of proof under §544(a) to show he meets the requirements of a hypothetical bona fide purchaser, and purchaser with implied constructive notice from facts that would prompt a reasonable person to inquire further is not a bona fide purchaser); *Software Customizer Inc. v. Bullet Jet Charter, Inc (In re Bullet Jet Charter),* 177 B.R. 593, 604 (Bankr. N.D. Ill. 1995) (debtor had burden under §544(a) to prove absence of constructive notice to hypothetical lienholder); *Livingston v. Central Bank of Swainsboro (In re Livingston)*, No. 90-60484, 1992 WL 12004360 at *3 (Bankr. S. D. Ga. March 30, 1992) (debtor has burden under §544 to establish under state law a superior interest to creditor whose interest is sought to be avoided).

Here, there was a paucity of evidence provided by Plaintiffs regarding the actual results of the mandated duty of "inquiry notice" by a hypothetical purchaser which is necessary to obtain bona fide purchaser status under §544(a)(3) and state law.   No evidence or facts were provided by Plaintiffs as to what an inquiry to the mortgage company (Nutter) on the date of the bankruptcy filing would have actually revealed with respect to the foreclosure sale or the Trustee's Deed to Navar, or what other available means of information at hand would have actually revealed.   No evidence was provided by Plaintiffs that proved a "reasonable inquiry" by a hypothetical purchaser regarding the status of the recorded Deed of Trust would not disclose the foreclosure sale and Trustee's Deed to Navar.

It was Plaintiffs' burden to prove "bona fide purchaser" status under §544(a) and state law, as the recorded Deed of Trust to Nutter put a hypothetical purchaser under a duty of "inquiry notice".   *Hamilton*, 125 F.3d at 299-300. Plaintiffs were clearly aware of the *Hamilton* decision and its "inquiry notice" requirement in this proceeding. Defendants had filed a pre-trial Motion (to which Plaintiffs responded) raising this very issue, and the Court raised it as well at trial.

Accordingly, as an alternative holding,[8]  the Court finds that Plaintiffs did not meet their burden of proof under §544(a)(3) to show that a hypothetical bona fide purchaser of real property could avoid the transfer of the Property to Navar.

---

[8] For the reasons set forth *supra*, the Court has already found that the evidence demonstrated that a hypothetical purchaser that performed a "reasonable inquiry" regarding the status of the recorded Deed of Trust on the date of Plaintiffs' bankruptcy filing would have learned of the existence of the foreclosure sale by Nutter and Trustee's Deed to Navar thereby defeating "bona fide purchaser" status under §544(a)(3).

**C.  Is the Transfer of the Property to Navar Avoidable as an Unauthorized Post-petition Transfer Under 11 U.S.C. §549(a)?**

Plaintiffs next contend that the transfer of the Property to Navar may be avoided and set aside as an "unauthorized" post-bankruptcy transfer under 11 U.S.C. §549(a).   Plaintiffs' contention is premised on the fact that the Trustee's Deed to Navar was recorded on August 16, 2010--after Plaintiffs' bankruptcy filing.

Section 549(a) of the Bankruptcy Code provides, in pertinent part, as follows:

(a)…the trustee may avoid a transfer of *property of the estate*—

(1) that *occurs after the commencement of the case*; and
(2) (A) that is authorized only under sections 303(f) and 542(c) of this title; or
     (B) that is not authorized under this title or by the court.

11 U.S.C. §549(a) (emphasis added).

On its face, §549 only applies to a transfer of "property of the estate" that "occurs after the commencement" of the bankruptcy case. Accordingly, the threshold legal issue before the Court is whether Plaintiffs and their bankruptcy estate had an interest in the Property at the time Plaintiffs filed for bankruptcy relief.

The filing of a bankruptcy case creates an estate composed of all legal and equitable interests of the debtor in property held as of the commencement of the case. 11 U.S.C. §541(a)(1).   Although bankruptcy law creates the estate, non-bankruptcy law determines the nature of the debtor's interest that becomes part of the bankruptcy estate.   *See e.g., Mut. Benefit Life Ins. Co. v. Pinetree, Ltd.*

29

*(In re Pinetree, Ltd.),* 876 F.2d 34, 36 (5th Cir. 1989) (also noting that "bankruptcy law does not create property"). The applicable non-bankruptcy law in this case is the state law of Texas.

Under Texas law, a foreclosure sale under a deed of trust is complete when the foreclosure was conducted in accordance with the deed of trust and the lender has accepted the purchaser's bid.[9] *Peterson v. Black,* 980 S.W.2d 818, 822 (Tex. Civ. App.-San Antonio 1998, no writ) (further holding that a foreclosure sale conducted in accordance with a deed of trust transfers equitable title to the purchaser even in the absence of a recorded deed); *see also Pioneer Bldg. & Loan Ass'n v. Cowan*, 123 S.W.2d 726, 730 (Tex. Civ. App.-Waco 1939, writ dism'd); *Garcia v. Garcia De Ortiz,* 257 S.W.2d 804, 808 (Tex. Civ. App.-San Antonio 1953, no writ).

If a valid foreclosure sale in accordance with state law takes place before a bankruptcy petition is filed, the debtor no longer has any legal or equitable interest in the property. As a result, the foreclosed property does not become property of the bankruptcy estate under §541(a)(1). *United States v. Bishop,* 262 B.R. 401, 405 (W.D. Tex. 2000) (also recognizing that under Texas law, a foreclosure sale transfers equitable title to the purchaser, even in the absence of a recorded deed). If a valid sale under state law of the debtor's property has occurred prior to the bankruptcy filing, a debtor no longer has a legal or equitable interest in the property, regardless of if the deed is recorded post-bankruptcy. *See In re*

---

[9] The Court finds nothing to suggest, based on the Joint PTO or Plaintiffs' contentions, that the foreclosure sale was not conducted in accordance with Texas law and the Deed of Trust provisions.

30

*Baumgardner,* No. 05-48969-DML, 2007 WL 655308 (Bankr. N.D. Tex. 2007) (also finding no violation of the automatic stay occurred for recording of a deed post-bankruptcy from a sale that was completed prior to the bankruptcy).

One bankruptcy court initially took a different view of Texas law based on very specific facts which are not present in this case. *Gomez v. Kamper Investments Inc.* (*In re Gomez),* 388 B.R. 279 (Bankr. S.D. Tex. 2008). This Court finds the *Gomez* decision relevant to the case at bar, as on appeal the district court reversed and confirmed that a foreclosure sale was complete and title was transferred under Texas law prior to the bankruptcy, even when the trustee's deed was not executed and recorded at the time of the bankruptcy filing.

In *Gomez,* a foreclosure sale was conducted by a lender under a deed of trust and Texas state law pre-bankruptcy. The trustee's deed to the foreclosure sale purchaser had not been executed or recorded as of the bankruptcy filing. *Gomez,* 388 B.R. at 283. The bankruptcy court analyzed when the foreclosure sale transfer was complete and thus whether title actually transferred to the foreclosure purchaser by the time of the debtor's bankruptcy. Focusing primarily on a conditional receipt provided to the purchaser at the foreclosure sale, the bankruptcy court determined that certain conditions in the purchaser's receipt prevented title (both equitable and legal) from transferring at the time of the foreclosure sale. Therefore, the bankruptcy court concluded that the foreclosure sale was not complete prior to the bankruptcy and the property was part of the

31

debtor's bankruptcy estate.[10]  388 B.R. at 281.

However, on appeal in *Gomez*, the district court reversed the bankruptcy court on this point. The district court held that--even though the trustee's deed to the foreclosure purchaser had not been signed or recorded prior to the bankruptcy filing--(i) equitable title to the property transferred to the foreclosure sale purchaser when the bid was accepted at the pre-bankruptcy foreclosure sale; and (ii) the debtors' rights in the property terminated under §1322(c)(1) of the Bankruptcy Code when the property was sold at the pre-bankruptcy foreclosure sale. *Kamper Investments, LLC v. Gomez (In re Gomez),* Civil Action No. M-08-155 (S.D. Tex. March 31, 2009) (unpublished).

Applying these legal principles to the instant case is quite straight forward. Here, the stipulated facts demonstrate that lender Nutter (through its substitute trustee Beverly Mitrisin) accepted Navar's bid for the Property at the foreclosure sale on August 3, 2010—the day before Plaintiffs' bankruptcy filing. The evidence also shows that on August 3, 2010 (the day before the bankruptcy filing):  (i) the Acknowledgement evidencing the foreclosure sale was signed and dated; (ii) the foreclosure sale purchase price was paid by Navar in certified funds; (iii) the Trustee's Deed to Navar was actually signed, notarized and dated; and (iv) the foreclosure sale was conducted and completed.  Indeed, one of the facts

---

[10] The facts in *Gomez* are very distinguishable from our case, as the foreclosure purchaser's receipt in *Gomez* (the only document evidencing the foreclosure sale) contained conditions that were unsatisfied at the time of the bankruptcy.  In contrast, the Acknowledgement provided by Nutter at the foreclosure sale did not contain such conditions, and the Trustee's Deed actually conveying the Property to Navar was prepared and executed prior to Plaintiffs' bankruptcy filing.

stipulated to by the parties in the Joint PTO was that "on August 3, 2010, at approximately 12:27 p.m., the subject real estate (the Property) was **sold** to Adalberto M. Navar"—which was the day before Plaintiffs' bankruptcy filing.

Based on the foregoing, the Court concludes that the foreclosure sale was completed on August 3, 2010, and title to the Property was transferred to Navar on August 3, 2010.  So, the Property was not "property of the estate" when Plaintiffs filed bankruptcy on August 4, 2010 nor did the transfer of the Property occur "after commencement of the case" within the scope of §549(a).  Thus, for these reasons, the recording of the Trustee's Deed to Navar on August 16, 2010 was not an unauthorized transfer under §549(a) of the Bankruptcy Code.

### D. Are Defendants Liable for Damages for Violation of the Automatic Stay Under 11 U.S.C. §362(k)(1)?

Alternatively, Plaintiffs allege in their Complaint that the Defendants are liable for damages under 11 U.S.C. §362(k)(1) for violations of the automatic stay. As to the alleged stay violations, Plaintiffs Complaint is quite vague. No violations of the automatic stay are mentioned in the Joint PTO, exhibits or Plaintiffs' briefs filed post-trial. One can only surmise that the stay violations asserted by Plaintiffs are based on Defendants' recording of the Trustee's Deed after the bankruptcy and Defendant Navar's filing of an eviction action against Plaintiffs.

The Court initially concludes that no violations of the automatic stay were pursued or proven at trial by Plaintiffs. The Joint PTO and attached exhibits are the evidence in this proceeding. Even if the Court considered the general suggestion by Plaintiffs in their Complaint that the automatic stay was violated, the Court finds

33

that it lacks merit.   Although the evidence demonstrated that the Trustee's Deed conveying the Property to Navar was filed of record after the bankruptcy, the Court has already determined that the foreclosure sale was completed prior to the bankruptcy and that the Property was not "property of the estate" under §549(a). For the same reasons, the Property was not "property of the estate" under §541(a) or of the debtors (Plaintiffs) when the bankruptcy was filed. Thus, there could be no violation of the automatic stay by recording of the Trustee's Deed since there was no action taken against the estate, the debtors as Plaintiffs, or their property under 11 U.S.C. §362(a).

    With respect to any alleged violation of the automatic stay due to Navar initiating an action against Plaintiffs to evict them from the Property after the bankruptcy, the Joint PTO and admitted exhibits provided no evidence as to such eviction action. If the Court were to consider the eviction action, the Court would also have to consider that Navar filed a Motion for Relief from Stay with the Court to proceed with such eviction action as a precautionary measure if the automatic stay applied. Moreover, given the Court's ultimate ruling in this proceeding—that the foreclosure sale was complete and the transfer of the Property to Navar is not avoidable by Plaintiffs—the Court is at a loss as to which provision of the automatic stay of 11 U.S.C. §362(a) could have been violated since Navar owned the Property.   Plaintiffs have certainly not pled or raised any particular provision of 11 U.S.C. §362(a) that would be violated.

10-03039-hcm  Doc#35  Filed 02/22/11  Entered 02/22/11 10:42:40  Main Document   Pg 35 of
37

Even if somehow Plaintiffs established a willful violation of the automatic stay, there is absolutely no evidence in the record regarding the damages caused by any alleged violations of the automatic stay. Section 362(k)(1) of the Bankruptcy Code allows individual debtors injured by willful violations of the automatic stay to recover actual damages (including costs and attorneys fees) and possibly punitive damages. 11 U.S.C. §362(k)(1).   Here, Plaintiffs failed to address any relief requested under 11 U.S.C. §362(k)(1) in Plaintiffs' briefing. The Joint PTO provides no factual basis whatsoever for this Court to address Plaintiffs' alleged cause of action under §362(k)(1) as generally stated in their Complaint. More importantly, the Joint PTO does not provide the Court with *any* evidence of the existence or amount of any damages under §362(k)(1), even if there was a violation of the automatic stay.

At the trial on January 14, 2011, counsel for Plaintiffs appeared with counsel for Defendants and requested the Court to render its decision in this proceeding based on the stipulated facts set forth in the Joint PTO with attached exhibits, and post-trial briefs.   At the trial, the Court specifically confirmed with counsel for Plaintiffs that they had no desire to present any additional evidence to the Court other than the evidence set forth in the Joint PTO with attached exhibits. The Court accepted the factual stipulations in the Joint PTO and admitted into evidence the exhibits attached to the Joint PTO.   Each of the parties, including Plaintiffs, then rested and closed their respective cases at the trial.

In sum, Plaintiffs have failed to meet their burden of proof as to the existence of any willful violation of the automatic stay. Plaintiffs have also failed to meet their burden of proof to establish any damages for any violation of the automatic stay under §362(k)(1). Accordingly, the Court concludes that Plaintiffs are not entitled to any recovery from Defendants under 11 U.S.C. §362(k)(1).

## III.  **CONCLUSION**

What a difference a day can make. This case presents a regrettable situation where Plaintiffs' bankruptcy petition, for whatever reason, was filed one day late and Plaintiffs' home was foreclosed upon before the bankruptcy. Thankfully these occurrences are infrequent, as the result can be disastrous to a debtor who can lose the opportunity to save their home. With the right set of facts and proof, the bankruptcy laws can provide relief to "undo" a pre-bankruptcy foreclosure, but the mountain that must be climbed is very technical and extremely steep. Few debtors have been successful in reaching the summit of this mountain and setting aside a foreclosure sale that occurred prior to the bankruptcy filing. Although this Court is extremely sympathetic to Plaintiffs' plight, in this case it is unable to "reverse" the foreclosure and give Plaintiffs back their home.

Plaintiffs' attempt to set aside the foreclosure sale under the "strong-arm power" of §544 must be denied as a hypothetical purchaser on the date of Plaintiffs' bankruptcy filing would not have "bona fide purchaser" status under §544(a)(3) of the Bankruptcy Code and Texas state law.  Plaintiffs also did not meet their burden of proof under §544, and for these reasons and those set forth in

36

this Opinion, Plaintiffs may not avoid the foreclosure sale transfer of the Property to Navar under §544(a)(3).

For other technical (yet critical) reasons, Plaintiffs are not entitled to set aside the foreclosure sale as an "unauthorized" post-petition transfer under §549(a) of the Bankruptcy Code. The foreclosure sale and transfer of the Property to Navar was complete under Texas law on August 3, 2010—the day before Plaintiffs filed bankruptcy. For this and other grounds set forth in this Opinion, Plaintiffs are not entitled to relief under §549(a).

Finally, Plaintiffs did not prove any violations of the automatic stay and, more importantly, provided no evidence of damages for such alleged stay violations.   For these reasons and others set forth in this Opinion, Plaintiffs are not entitled to a recovery against the Defendants under §362(k)(1) of the Bankruptcy Code.

In sum, the relief sought by Plaintiffs against Defendants in this proceeding is denied.   A Final Judgment in this adversary proceeding will be entered of even date that incorporates this Memorandum Opinion.

###